**COPPER CANYON LAW**

*43 East 1st Ave*
*Mesa, Arizona 85210*
*Office: (480) 833-3838*
*Fax: (480) 833-3838*
*www.coppercanyonlaw.com*
Timothy F. Coons (031208)
Timothy@coppercanyonlaw.com
Spencer M. Coons (032874)
Spencer@coppercanyonlaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Sam Sobh, an individual<br><br>Plaintiff,<br><br>vs.<br><br>PGI/Phoenix Graphix, Inc., an Arizona Corporation; PGI/Phoenix Graphix, Inc. Profit Sharing Plan and Trust, an ERISA covered benefit plan; Brian Kotarski, an individual; Anne Kotarski, an individual,<br><br>Defendants. | Case No. CV-19-05277-PHX-SRB<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff, Sam Sobh, alleges as follows:

## **PRELIMINARY STATEMENT**

1. Plaintiff was an employee of PGI/Phoenix Graphix, Inc. ("PGI") for nine years.

2. Plaintiff is a participant in and a beneficiary of a plan covered by the Employee Retirement Income Security Act ("ERISA.") 29 U.S.C. § 1001 *et seq.*

3. In accordance with the ERISA plan documentation, Plaintiff has requested the benefits under the Plan and was refused.

4. Plaintiff has requested the reason for his denial, rights for appeal, and the paperwork required under ERISA. These requests have been denied.

5. Plaintiff was terminated by PGI.

6. Plaintiff has requested payment of his final earned wages, including all earned bonuses.

7. Plaintiff has requested payout of his paid-time-off and paid sick leave.

8. PGI has refused to payout Plaintiff's final earned wages and paid-time-off, including paid sick leave.

## JURISDICTION AND VENUE

9. The Claims asserted fall under 29 U.S.C. § 1001 *et seq.* and other applicable federal laws.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because acts giving rise to the claims of the Plaintiff occurred within the District of Arizona, and Defendants regularly conducts business in and has engaged in the wrongful conduct alleged herein and, thus, is subject to personal jurisdiction in this judicial district.

## PARTIES

12. At all relevant times alleged herein, Plaintiff resided in the State of Arizona in Maricopa County.

13. Defendant PGI is a corporation organized under the laws of Arizona, with its principal place of business in Maricopa County.

14. Defendant PGI / Phoenix Graphix, Inc. Profit Sharing Plan ("Plan") is an employee benefit plan covered by ERISA.

15. The Master Plan Document for the Plan is attached hereto as "**Exhibit A**".

16. An ERISA plan must be administered by a Plan Administrator.

17. The Plan identifies in Article 2.2, that the Administrator will be defined in Section 9.1. (**Exhibit A** at pg. 2)

18. Section 9.1 states that the Plan shall be administered by an Administrator, who shall be appointed by the board of directors of the Employer, but does not identify an Administrator. (**Exhibit A** at pg. 41)

19. If PGI/Phoenix Graphix Inc. is the Plan Administrator as stated in the subsequent 2016 Summary Plan Description, then it is believed that Brian and Anne Kotarski are indirectly the Administrators of the Plan as they are the sole individuals who can take action on behalf of PGI based upon their ownership of and positions as Directors of PGI.

20. It is further believed that Anne Kotarski and/or Brian Kotarski are the Plan Administrators as represented by Defendants to Plaintiff on multiple occasions including:

   a. Both Brian and Anne Kotarski are listed as the Plan Trustees in the Plan;
   b. Both Brian and Anne Kotarski are listed as the only shareholders and directors of PGI with the Arizona Corporation Commission;
   c. Brian and Anne Kotarski appear to be the individuals who were the Plan Originators;
   d. Brian Kotarski conducted numerous meetings with Plan members in what appeared to be the roll of Plan Administrator; and,
   e. Brian ~~Kotarski's~~Kotarski' s work e-mail address is the only method of communicating directly with the Plan Administrator.

21. Upon information and belief, Brian and Anne Kotarski resided in Maricopa County, Arizona, at all relevant times herein.

22. Upon information and belief, Brian and Anne Kotarski owe fiduciary duties to Plan participants whether as Trustees, Administrators or as the sole owners and actors of the PGI Plan.

23. Upon information and belief, the Plan Administrator is a resident of Maricopa County and is subject to the personal jurisdiction of this Court.

24. Defendant Anne and Brian Kotarski were at all relevant times herein, Employers as defined in A.R.S. § 23-350.

## FACTUAL ALLEGATIONS

25. Plaintiff was employed by PGI for approximately nine years.

26. The relationship between Plaintiff and PGI became untenable and Plaintiff and PGI separated employment.

27. While employed with PGI, Plaintiff became a beneficiary under the Plan.

28. The Plan is a benefit plan subject to the requirements of ERISA.

29. Under the Plan, section 7.1(A) "Hardship Distribution", a Participant or beneficiary may request a distribution of funds for an immediate and heavy financial need for reasons enumerated in the Plan. (**Exhibit A** at Page 27).

30. Among the reasons listed for a qualifying Hardship Distribution is expenses for medical care, paying education loans, purchase of a principal residence, and payments necessary to prevent eviction from the principal residence. (**Id.**)

31. Plaintiff has repeatedly requested numerous times while experiencing qualifying heavy financial events to receive a distribution under the terms of the Plan as enumerated in Section 7.1(A) and has been repeatedly denied.

32. After PGI's cancellation of Plaintiff's health insurance policy following his employment, Plaintiff, through his counsel, requested a Hardship Distribution for qualifying medical expenses to continue his medical follow up in order to cure a medical condition caused from a toxic work environment created by Defendants. (**Exhibit B** – Email to Defendant Requesting a Hardship Distribution; *See also* **Exhibit A** Section 7.1A (a) (i) at page 27)

33. Plaintiff requested a Hardship Distribution for qualifying education expenses. (**Exhibit B;** *See also* **Exhibit A** Section A 7.1A (a) (iii) at page 27)

34. Plaintiff requested a Hardship Distribution to avoid default on his rental payment. (**Exhibit B;** *See also* **Exhibit A** Section A 7.1A (a) (iv) at page 27)

35. Later, Plaintiff requested a Hardship Distribution to assist with the purchase agreement for his residential property. (**Exhibit A** Section A 7.1A (a) (ii) at page 27)

36. All of these events would independently qualify for a Hardship Distribution.

37. Without reviewing the validity of Plaintiff's request for a Hardship Distribution, Defendants summarily denied and totally ignored Plaintiff's request.

38. In Defendants' email response to Plaintiff's Hardship Distribution request on September 20, 2018, Defendants stated the following:

> The actuary for the Plan advises that Mr. Sobh does not qualify for the hardship distribution because that applies to participants who are actively employed.

39. The Plan Actuary and their role is not identified in the Master Plan or the Plan Summary.

40. The only reason that Defendants denied Plaintiff's Hardship Distribution request was because Plaintiff was not "actively employed" at the time of his request. (**Exhibit B** email dated September 20, 2018)

41. The supposed requirement that Plaintiff be actively employed does not come from the Master Plan Document, but rather comes from the Summary Plan Description which labels a Hardship Distribution as an "in-service distribution". (**Exhibit C - Summary Plan Document** at pg. 10-11)

42. The "in-service distribution" language in the Plan Summary does not exist in the Master Plan Document.

43. The Master Plan Document specifically states that "a Participant may apply in writing to the Administrator for a hardship withdrawal of part or all of his net distributable amount." (**Exhibit A** Section A 7.1A at page 26)

44. A Participant is defined in the Master Plan as "every Employee or former Employee who has met the applicable participation requirements of Article III."

45. At all times relevant to these claims, Plaintiff was a qualifying Participant under the Plan, having met all of the requirements of Article III of the Master Plan and was entitled to the benefits under the Plan both during and after his employment.

46. In case of a conflict between the Master Plan Document and the Summary Plan Description, the Master Plan Document governs the Plan.

47. Plaintiff requested the corresponding documentation regarding the reason for his denial, procedure for appeal, and supporting paperwork as required under the Plan and as required by ERISA.

1    48.    Defendants did not provide this information.

2    49.    Therefore, Defendants' denial of Plaintiff's Hardship Distribution requests are faulty and have caused great harm to the Plaintiff and his family.

3    50.    Upon information and belief, the Plan has disbursed funds as a hardship distribution for employees that were no longer actively employed by Defendant.

4    51.    Plaintiff's first request for access to Plan documents came back in March of 2016 after Brian Kotarski sent an email requesting that Plaintiff sign a new Beneficiary Designation Form, a Wage Deferral Agreement and a PSP Annual Notice document from Brian Kotarski.

5    52.    Plaintiff sent an email back to Brian Kotarski with a series of questions including:

> Is this a 401K "Safe Harbor" plan?
> Are we terminating our current PSP?
> Are we withdrawing the money from current plan and starting a new elective deferrals program under a new plan?
> Who is the plan administrator?
> What will happen if the plan administrator quit?
> Who is the plan financial advisor?
> Are we set as a plan fiduciary and can offer advice. If not. who will be making these decisions? Plan admin or Financial advisor?
> How much is the plan/participant fees?
> What are the risk and fiduciary duties on our plan?
> What is PGI's match, Dollar-for-dollar?
> Can participants stay in the plan if they are terminated?
> Are we able to review our plan's performance fund statement?
> Please, may I get a copy of the SPD?

**(Exhibit D)**

53.    Defendants never provided a full response to Plaintiff, nor did they provide him with any Plan Documents other than a 2016 Summary Plan Description at that time which was believed to summarize the original 2001 Plan.

54.    On October 30, 2018, following Plaintiff's separation of employment with Defendant PGI, Plaintiff both individually and through his legal counsel made multiple request to obtain any and all Plan Documents available stating: "…my client is entitled to a copy of al [sic] Plan documents, the latest annual report (Form 550 Series) and an updated summary Plan description.".    (See **Exhibit E**)

55. That same email further states "[s]eeing as we made a first request for payout of the Plan in August 2018 and have made multiple request for the Plan Documents since that time, we believe the my client is entitled to receive the $110 a day until he has received the materials requested and or the appropriate contents of notice of denied claim.". [sic] (See **Exhibit E**)

56. Defendants only produced the 2001 Master Plan Document and 2016 Summary Plan Document as attached to this pleading.

57. Defendants did not produce any additional Plan documents despite the multiple requests made by Plaintiff, and through Plaintiff's counsel.

58. Plaintiff filed his initial Complaint against Defendant on November 14, 2018. Defendant then filed a Motion to Dismiss on February 19, 2019 (See Case 2:18-cv-04073-DWL – Document 12)

59. In Defendants' Motion to Dismiss, nowhere did it cite to or allege that additional Plan Documents existed or should govern Plaintiff's rights under the Plan.

60. In Defendants' Motion to Dismiss, Defendants' represented to the court that the 2001 Plan Documents dictated Plaintiff's profit sharing rights and even attached the 2001 Plan Documents as an exhibit to the Motion. (See Case 2:18-cv-04073-DWL – Document 12 and 12-1).

61. Subsequently, Plaintiff again requested any and all Plan documents from Defendants on September 17, 2019, in addition to asking for detailed annual reports as reported on the Form 5500. (See **Exhibit F**)

62. Defendants' ignored this request.

63. Plaintiff refiled a Complaint against Defendants on September 26, 2019.

64. As it did previously, Defendants' (with new legal counsel), filed a Motion to Dismiss on October 25, 2019, relying largely on the same arguments, including the 2001 Master Plan Document, as found in the Motion to Dismiss filed previously. (See Case 2:19-cv-05277-SRB Document 10).

65. Not only that, but also Defendants inappropriately attempted to have the previous dismissal without prejudice be made a dismissal with prejudice despite the plain reading of the previous Court's order stating otherwise. (See Case 2:18-cv-04073-DWL Document 24).

66. Up until this time, Defendants had not disclosed any additional Plan documents to Plaintiff despite them apparently being in existence and available to be produced.

67. Upon information and belief, Defendants filed their second Motion to Dismiss knowing that they had failed to provide all of the Plan Documents to Plaintiff, despite repeated requests, and with hopes that further litigation of these issues could be prevented so they would not have to disclose the material changes they had made to the Plan Documents while failing to notify Plan Participants of the changes as required under ERISA.

68. Plaintiff filed a First Amended Complaint on November 8, 2019, realleging the same claims as alleged previously with additional information supporting those allegations.

69. In a letter dated November 19, 2019, Defendants disclosed for the <u>first time</u> that the 2001 Master Plan had allegedly been amended in 2016 by way of an "Adoption Agreement". (**Exhibit G**)

70. If valid, these new Plan documents should have been produced no later then Plaintiff's initial request for the Plan documents.

71. This Plan document was not produced despite Plaintiff's multiple requests and Defendants affirmative obligation to produce the Plan documents.

72. In emails prior to the filing of the present action, Plaintiff's counsel requested the current Master Plan document. (**Exhibit H**)

73. Defendants' counsel responded to the request and attached the 2001 Master Plan Document that is the subject of this litigation (**Exhibit I**)

74. In the letter dated November 19, 2019, counsel for Defendants stated that "[i]n 2016 PGI/Phoenix Graphix, Inc. executed an Adoption Agreement which restated the 2001 'Master Plan Document.'" (**See, Exhibit G**)

75. The only document attached to that letter was a copy of the 2016 Adoption Agreement. (**Id.**)

76. The Adoption Agreement does not change the definition of the word "Participant" as found in the 2001 Master Plan Document and therefore does not change the availability of Plaintiff receiving a "hardship distribution" after his separation from employment with Defendant PGI.

77. Plaintiff's counsel immediately notified Defendants' counsel via email on November 20, 2019 that neither Plaintiff, nor his counsel, had ever received any Plan documents other than the 2001 Master Plan and the 2016 Summary Plan Description. (See **Exhibit J** – Email to Defendant's Counsel)

78. It was only following those conversations, where Plaintiff again asked for all documentation relating to the Plan, that Defendants agreed to provide all Plan Documents.

79. On December 9, 2019, nearly three years after Plaintiff's first request in 2016, over a year after Plaintiff's counsel's request in October 2018, and nearly three months after Plaintiff's email request for documents in September 2019 and despite representations by Defendants that the 2001 Master Plan Document was the governing and current Master Plan, Defendants disclosed 278 pages of documents which included the following:

    a. The 2001 Master Plan Documents
    b. A 2005 Master Plan Amendment Document (Never before disclosed)
    c. A January 2008 Amended and Restated Master Plan Document (Never before disclosed)
    d. A February 2016 Summary Plan Description

      e. A 2016 Adoption Agreement Signed March 28, 2016 (Disclosed for the first time on November 18, 2019)

      f. A Directors' Written Consent to Action Document Signed March 28, 2016 (Never before disclosed)

      g. An unsigned and alleged New 2016 Master Plan Document (Never before disclosed)

80. Plan Administrators have a duty to disclose new Plan Documents to Plan Participants and to additionally provide Plan documents to Participants when requested by the Participant.

81. Plaintiff was not provided the Plan documents as stated above, nor were they provided to Plaintiff's legal counsel after making a request in October 2018.

82. Plaintiff was not provided these documents in filings by Defendant in Plaintiff's initial lawsuit.

83. Through their counsel, Defendant PGI now represents that this new 2016 Master Plan Document was adopted as the PGI Plan through the Adoption Agreement and through the Directors' Written Consent to Action Document.

84. Both of these Agreements are signed solely by Brian and Anne Kotarski which is further evidence of their role as not only Plan Trustees, but also as individual Plan Administrators.

85. It is still unclear, however, how the alleged 2016 Master Plan Document has been adopted by Defendant as the 2016 Master Plan is not signed.

86. The alleged New 2016 Master Plan Document materially alters the Plan, specifically with regards to Plan Participants eligibility to received hardship distributions.

87. The New 2016 Master Plan Document defines a "Participant" as an "Eligible Employee" who is "employed by the Company", rather than as a current or former Employee as found in the 2001 Master Plan Document.

88. Defendants now wish to use this New 2016 Master Plan Document to deprive Plaintiff the benefits of the 2001 Master Plan Document that governed Plaintiff's

profit sharing rights and which Defendant's have argued throughout the entirety of the litigation between Plaintiff and Defendants governed Plaintiff's profit sharing rights.

89. Defendants knew or should have known of these new Plan documents when Plaintiff's initial request for a distribution was made in 2018.

90. Defendants knew or should have known of these new Plan documents when Defendants denied Plaintiff's request for a hardship distribution in 2018.

91. Defendants knew or should have known of these new Plan documents when Defendants Plaintiff filed his initial complaint against Defendants in 2018.

92. Despite Defendants knowledge of these new Plan documents and Defendants obligation to provide them to Plaintiff, Defendants failed to produce these Plan documents.

93. Upon information and belief, Defendants did this in an effort to avoid potential liability under 29 U.S.C. 1132(c) for their failure to timely disclose Plan documents when amendments occurred and as requested by Plaintiff since March 2016.

94. Plaintiff relied on Defendants misrepresentations by pursuing claims under the 2001 Plan Documents and by not pursuing claims available under 29 U.S.C. 1132(c) and by not being able to further allege the breach of fiduciary duty engaged in by Defendants Brian and Anne Kotarski.

95. This reliance has been to the harm of Plaintiff and to the benefit of Defendants.

96. As a direct result of Defendants actions, Plaintiff has been wrongfully denied his benefits under the Plan, and he was not provided with the required documentation regarding his denial and any rights for appeal dating back to October 2018.

97. Furthermore, Defendants have continued to fail to produce, as requested by Plaintiff in September 2019, financial records relating to the Plan, specifically the yearly Form 5500 filings.

98. Defendants' conduct by improperly withholding Plan documents from a Plan Participant, wrongfully withholding information regarding the Plan's yearly financial

records, (including Form 5500 filings), and wrongfully attesting to the Court that the 2001 Plan Document is the prevailing Plan document up through December 2019 while knowingly withholding new Plan documents in their possession, is a breach of the fiduciary duties owed to all Plan participants and a breach of the duties of a Plan Administrator.

99.     Plaintiff's claim for improper denial of Plan benefits must be governed by the Plan documents cited to the Plaintiff and produced by the Defendants at the time of the requests for the distribution so as to not prejudice Plaintiff by Defendant's surprise disclosure of new Plan documents.

100.    Defendants should be prohibited from using previously undisclosed Plan documents, that they had the obligation to produce as means of denying Plaintiff's request for Plan benefits.

101.    In addition, Plaintiff earned commissions, bonus payments, paid-time-off, paid sick leave prior to his termination that PGI has refused to pay to Plaintiff.

102.    By doing so, PGI and the Kotarski's have unlawfully retained earned wages due and owing to Plaintiff.

### COUNT ONE

### Improper Denial of Plan Benefit § 502(a)(1)(B)

### (As to all Defendants)

103.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

104.    Plaintiff made a claim for benefits under the Plan.

105.    Plaintiff's claim for benefits have been improperly denied and ignored.

106.    Plaintiff has exhausted all administrative remedies under the Plan that have were disclosed or made available to him.

107.    The Plan does not mandate exhaustion of administrative remedies prior to seeking judicial review.

108. Under the 2001 Master Plan Documents as produced by the Defendants and required under ERISA, the Plaintiff was eligible for and should have received a hardship distribution.

109. Defendants should not be permitted to use previously undisclosed documents, that they were under an affirmative duty to disclose more then a year ago to deny Plaintiff's claims.

110. Plaintiff is entitled to the benefits under the PGI Plan, under the documents provided to him.

111. Plaintiff has been prejudicially blocked from the benefits he is entitled to.

112. As a direct result of Defendants' unlawful acts, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT TWO
### Declaratory Relief
### (As to All Defendants)

113. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

114. A controversy exists regarding the rights of Plaintiff between Plaintiff, the Plan, and the Plan Administrator.

115. Plaintiff has been unable to obtain benefits as provided under the terms of the plan.

116. By reason of the foregoing clarification of Plaintiff's rights to future benefits under the terms of the Plan is necessary.

117. Plaintiff is entitled to declaratory relief confirming his rights under the PGI Plan.

## COUNT THREE
### Breach of Fiduciary Duty § 502(a)
### (As to Defendants PGI and the Kotarski's)

118. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119. Defendants owed a fiduciary duty to Plaintiff to ensure that the Plan was administered properly.

120. Plaintiff made a claim for benefits under the Plan.

121. Plaintiff's claim for benefits have been improperly denied and ignored.

122. Plaintiff was not provided proper reasoning for the denial nor was it in the proper format.

123. Defendants failed to properly disclose amendments and revision to the Plan until December 9, 2019 despite numerous requests by Plaintiff and his counsel dating back to as early as March 2016.

124. Upon information and belief, Defendants knowingly and/or intentionally withheld Plan documents and even presented information to the Court that the 2001 Plan Document was the current Plan Document.

125. Upon information and belief, Defendants did this in order to avoid potential penalties as found under 29 U.S.C. 1132(c).

126. Defendant has failed to provide financial records relating to the Plan as requested by the Plaintiff.

127. Defendants' failed to administer the Plan properly.

128. Because of Defendants actions, Plaintiff has been harmed.

129. Defendant Brian and Anne Kotarski are the Trustees of the Plan, the shareholders of PGI, the directors of PGI, direct or indirect Administrators of the Plan, and Originators of the Plan.

130. It is believed that Defendants Brian and Anne Kotarski, as individuals who control the Plan, have caused a denial of Plaintiff's benefits in an effort to cause harm to Plaintiff due to his separation of employment.

131. Plaintiff is entitled to all damages stemming from this breach of fiduciary duty, including punitive damages.

## COUNT FOUR

### Violations of 29 U.S.C. 1132(c)
### (As to All Defendants)

132. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

133. Defendants, PGI, the PGI Plan, and the Kotarski's in their capacity as Plan Trustees and Administrators, failed to provide Plaintiffs with Plan documents, amendments, revisions and financial documents related to the Plan that were requested by Plaintiff.

134. Defendants, PGI, the PGI Plan, and the Kotarski's in their capacity as Plan Trustees and Administrators in their capacity as Plan Trustees and Administrators, failed to provide Plaintiff with a detailed reason as to why Plaintiff was denied a hardship distribution when requested and failed to provide any Plain documents to support their position.

135. By doing so, Defendants are liable under 29 U.S.C. 1132(c) and other applicable statutes.

## COUNT FIVE

### Improperly Retained Wages A.R.S. §23-350 *et seq*.
### (As to Defendants PGI and the Kotarski's)

136. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

137. Plaintiff was entitled to outstanding bonus payments as wages, prior to his termination.

138. Defendants are in breach of company's paid-time-off and paid sick leave policy.

139. Defendants are in breach of an exclusive employment contract signed with Plaintiff.

140. Plaintiff was entitled to his paid-time-off and paid sick leave policy being cashed out per company practice.

141. These payments and funds constitute wages under Arizona Law.

142. Employment termination and the retaining of Plaintiff's wages increased Plaintiff's financial hardship.

143. Brian and Anne Kotarski acted as individual employers when wrongfully denying the payment of wages to Plaintiff.

144. PGI has improperly retained Plaintiff's wages in violation of A.R.S. 23-250 *et seq*.

145. As a direct result of Defendants' acts, Plaintiff has suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief in Plaintiff's favor and against Defendants:

A. For the Court to award all damages in an amount to be determined at trial;

B. For the Court to award incidental, compensatory and consequential damages in an amount to be determined at trial;

C. For the Court to award damages under 29 U.S.C. 1132(c) and other applicable statutes;

D. For the Court to preclude Defendants from using Plan Documents not previously disclosed to determine the meaning of a hardship distribution;

E. For the Court to award treble damages as allowed under A.R.S.§ 23-355;

F. For the Court to determine Plaintiff entitlement to funds under the Plan documents and order a disbursement as a hardship distribution.

G. For the Court to award punitive damages for Defendants' knowing violation of the law in an amount to be determined at trial;

H. For the Court to award prejudgment and post-judgment interest;

I. For the Court to award Plaintiff's reasonable attorneys' fees and costs of the actions pursuant to any applicable contract or law and all other causes of action set forth herein; and

J. For such other relief as this Court shall deem just and proper.

RESPECTFULLY SUBMITTED this 17th day of December, 2019.

                              **COPPER CANYON LAW LLC**

                              /s/ Timothy F. Coons
                              Timothy F. Coons
                              Spencer M. Coons
                              43 East 1st Ave
                              Mesa, Arizona 85210
                              Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ Cara Eells