**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sam Sobh, | No. CV-19-05277-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Phoenix Graphix Incorporated, et al., | |
| Defendants. | |

Plaintiff Sam Sobh filed this suit claiming he was seeking a "hardship distribution" from the pension plan he participated in while employed by Defendant Phoenix Graphix Inc. The Court previously concluded Sobh was "not eligible for a hardship distribution" under the terms of the pension plan. (Doc. 40 at 13). Despite losing his claim regarding a hardship distribution, Sobh continues to pursue three other claims against Phoenix Graphix and two individuals: breach of fiduciary duty, statutory penalties for not providing timely copies of documents, and unpaid wages. Sobh seeks summary judgment on his claim for not providing copies of documents and requests an award of approximately $250,000. Phoenix Graphix and the two individuals seek summary judgment on all three claims.

Viewing the facts in the light most favorable to Defendants, Sobh did not receive documents within thirty days of a valid request and he is eligible for an award of statutory penalties. But the delayed production of documents did not prejudice Sobh and Sobh's own behavior indicates this litigation was motivated, at least in part, by something other than Sobh's desire to obtain his benefits under the pension plan. Thus, Sobh will be

awarded $2,750, half of the maximum possible award.

Viewing the facts in the light most favorable to Sobh, Defendants are entitled to summary judgment on the claims for breach of fiduciary duty and unpaid wages. Therefore, a limited judgment will be entered in favor of Sobh.

## BACKGROUND

As of March 2016, Sobh was an employee of Phoenix Graphix participating in Phoenix Graphix's "Profit Sharing Plan" (the "Plan"). On March 28, 2016, the President of Phoenix Graphix, Brian Kotarski, sent an email to Sobh and other employees stating the employees had recently received information about changes to the Plan. Sobh responded to that email the following day with a series of questions regarding the Plan's administration. Included in that email was the following statement: "Please, may I get a copy of the SPD [summary plan description]?" (Doc. 32-1 at 280). The parties have not provided evidence establishing what documents, if any, Sobh received in response to this email.[1]

Sobh was still working for Phoenix Graphix on June 1, 2018, when he sent an email to another employee of Phoenix Graphix, Anne Kotarski. That email was responding to an email from Anne where she seemed to be recommending a house Sobh might wish to buy. Sobh's email stated, in full:

> Anne, I will view [the house] more when I finish.
>
> Market prices are very high, with current conventional loan terms a decent down payment must be ready. appx. $65K
>
> Anne, I am very frustrated to the fact that I didn't receive the requested full plan documents yet to understand in depth my grounds especially now that I need to tap in to my funds for a down payment and settle my kids. Maybe you need to speak to [another Phoenix Graphix employee] directly to obtain a complete final copy of the Plan.

---

[1] Sobh argues the penalties for failing to produce documents should start accruing as of the date of this email. Thus, while it appears Sobh is arguing he did not receive a copy of the SPD in response to his request, he submits no evidence—such as a statement in his affidavit—establishing this fact. (Doc. 70 at 8). Defendants argue Sobh "was provided" the SPD after his email. (Doc. 79 at 6). This dispute of fact is immaterial because, as explained later, any claim based on the March 29, 2016, email is barred by the statute of limitations.

     (Are we able to assist with the plan investment decisions?)

     Please let me know, I need to be ready to submit an offer.

     Truly,

     Sam

(Doc. 71-7 at 2). The parties have not explained when Sobh made the request for "full plan documents" referenced in this email. Nor have the parties stated whether Anne Kotarski responded to this email. According to Sobh, this email was "clear notice" that he was seeking "the applicable master plan document" as of June 1, 2018. (Doc. 76 at 11). Sobh argues, but submits no evidence, that "[n]o plan documents were provided" in response to this June 1, 2018, email.[2] (Doc. 76 at 12).

  Sobh stopped working for Phoenix Graphix in approximately July 2018. After leaving his job, Sobh began seeking an immediate distribution of his account balance in the Plan. On August 14, 2018, Sobh emailed Brian Kotarski and stated he was going through "financial hardship" and he needed to "exit out of the plan and transfer the vesting to my personal bank account." (Doc. 32-1 at 282). Brian Kotarski responded the next day by quoting from a Plan document which stated distributions after termination of employment would "commence" at the "End of Plan Year," meaning Sobh could receive his entire account balance in approximately March/April of 2019. (Doc. 32-1 at 284). Apparently Sobh believed he was entitled to an immediate distribution and he retained counsel to help him obtain such a distribution.

  In September and October 2018, Sobh's counsel exchanged emails with Phoenix Graphix's counsel regarding Sobh's request for an immediate "hardship withdrawal." (Doc. 71-8 at 6). On October 30, 2018, Sobh's counsel wrote an email to Phoenix Graphix's counsel that quoted from Plan documents regarding what information must be included when the Plan denied a claim for benefits. The email also quoted a portion of the

---

[2] Sobh's motion for summary judgment was supported by a statement of facts. In that statement of facts, Sobh states "In all requests, Plaintiff and Plaintiff's counsel were either met with no response or only the 2001 Plan and 2016 Summary were provided." (Doc. 71 at 3). That statement has no supporting citation to the record.

1   Plan documents stating a participant may be entitled to "up to $110 a day" if he does not
2   receive copies of requested documents within 30 days.  The email ended with the following
3   statement:

> Seeing as we made a first request for payout of the Plan in August 2018 and have made multiple requests for the Plan Documents since that time, we believe the my [sic] client is entitled to receive the $110 a day until he has received the material requested and or the appropriate contents of notice of denied claim.

(Doc. 71-8 at 2).  Sobh points to this email as another "clear notice" he was seeking the Plan's SPD as well as the "master plan" document.  (Doc. 76 at 12).  Sobh argues, but again presents no evidence, that "no documents were provided" in response to his counsel's October 30, 2018, email.  (Doc. 76 at 12).

In November 2018, Sobh filed his first lawsuit against Phoenix Graphix and its employees.  The most important aspect of the complaint in that suit is that Sobh alleged he was entitled to have his Plan benefits "cashed out."  (Doc. 1 at 3 in CV-18-4073).  Service of process in that suit was not completed until the end of January 2019.  On February 15, 2019, Phoenix Graphix's counsel wrote to Sobh's counsel asking that Sobh voluntarily dismiss his suit.  Phoenix Graphix's counsel explained that Sobh could obtain the "cash out" he was seeking by completing certain forms.  (Doc. 73-2 at 26).  If Sobh completed the forms, he could receive his full account balance on March 31, 2019.  Sobh chose not to receive a distribution at that time.  When asked later why he opted not to take a distribution at that time, Sobh provided an answer indicating he was not merely interested in obtaining his Plan benefits.

According to Sobh, he refused to take a distribution in March 2019 because there had been unacceptable delay after his initial request for a distribution and then "it got personal" such that Anne Kotarski tried to "punish" him.  (Doc. 73-2 at 30).  It appears Sobh placed some unique importance on the idea that his distribution should be identified as a "hardship distribution" instead of a "cash out distribution."  Sobh has never explained why this distinction mattered to him.  But when pressed on this point at his deposition,

Sobh stated

> No, it's common sense. It's the difference between the truth versus the lies. I made my request based on a hardship. Everything was legit. Everything was documented. All of a sudden we get into an employment dispute, Anne wants to take revenge back on me. She decided, Okay, we're not paying anything for Sam. 10 years of his life that he contributed to the company is out of the window.

(Doc. 73-2 at 31). Regardless of Sobh's motivation for refusing a complete distribution of his Plan benefits, he chose to proceed with litigation.[3]

Phoenix Graphix and the other defendants moved to dismiss Sobh's complaint by pointing out the terms of the Plan did not permit the immediate "cash out" Sobh was seeking. Sobh opposed the motion to dismiss by claiming he was seeking a "hardship distribution" not a "cash out." On August 22, 2019, the Court granted the motion to dismiss based on the complaint explicitly seeking a "cash out." The Court explained Sobh's attempt to change theories from seeking a "cash out" to seeking a "hardship distribution" was inappropriate because Sobh could not "articulate an entirely new theory of liability in his motion papers that doesn't appear in the complaint itself." (Doc. 20 at 5). Sobh was granted leave to amend but he did not do so. Thus, a judgment of dismissal without prejudice was entered on September 17, 2019. (Doc. 22 in CV-18-4073).

The same day judgment was entered in his first lawsuit, Sobh and his counsel sent separate emails requesting plan documents. (Doc. 71-9, 71-10). A little over one week later, on September 26, 2019, Sobh filed the present suit against Phoenix Graphix, the Plan, Brian Kotarski, and Anne Kotarski. The complaint focused on Sobh's request for a hardship distribution under the terms of the Plan in effect as of 2001. On December 6, 2019, Phoenix Graphix's counsel provided Sobh copies of the Plan documents that had been requested on September 17, 2019. The parties then filed competing motions regarding

---

[3] A "hardship distribution" might receive different tax treatment from other types of distributions. *See* 26 U.S.C. § 72(t)(1) (identifying types of distributions from qualified retirement plans that are not subject to ten percent additional tax). But Sobh has never maintained he was eligible for different tax treatment if his withdrawal was identified as a "hardship distribution." In other words, Sobh has never stated why he cared if he received his account balance as a "hardship distribution" instead of a "cash out distribution."

- 5 -

1   which version of the Plan applied (*i.e.*, the 2001 version or the 2016 version) and whether
2   Sobh was entitled to a hardship distribution under the applicable version. On December 8,
3   2020, the Court determined the 2016 version of the Plan applied and, under that Plan, Sobh
4   "was not eligible for a hardship distribution." (Doc. 40 at 13). In that Order the Court
5   noted Sobh had three remaining claims: "breach of fiduciary duty under ERISA § 502(a);
6   violation of ERISA § 502(c) for not providing documents in timely manner; and
7   improperly retained wages under A.R.S. § 23-350." (Doc. 40 at 13). The parties pursued
8   discovery on these remaining claims.

9       During the discovery period, Sobh had numerous communications with defense
10  counsel. Sometime around February 2021, Sobh was again informed he could elect to
11  receive a distribution of his entire account balance. (Doc. 73-3 at 5). That prompted other
12  communications that are difficult to understand. At one point, Sobh stated defense counsel
13  and Phoenix Graphix were trying "to make a bargain to steal" the funds in his account and
14  Phoenix Graphix had committed "a failed promissory confirmation." (Doc. 73-3 at 7).
15  Eventually, however, Sobh agreed to take a distribution. Sobh received his full account
16  balance of $45,780.85 in approximately March 2021. (Doc. 72 at 12).

17      The parties completed discovery and in August 2021 filed cross-motions for
18  summary judgment. Sobh seeks summary judgment on his claim for statutory penalties
19  based on the untimely production of documents. (Doc. 70). According to Sobh, statutory
20  penalties began to accrue when he did not receive documents in response to his March 29,
21  2016, request. Sobh argues that request, as well as his many later requests, were not
22  responded to until December 6, 2019. (Doc. 70 at 8). Sobh argues the multiple penalties
23  should stack and he seeks a total of approximately $250,000 in penalties. Phoenix Graphix
24  responds that many of Sobh's requests for documents fall outside the statute of limitations
25  or were not sufficiently clear to trigger possible liability. Phoenix Graphix concedes,
26  however, that Sobh made valid requests for documents in September 2019 which were not
27  responded to until eighty days later in December 2019. Therefore, Phoenix Graphix agrees
28  Sobh is eligible for an award of penalties based on a fifty-day delay. (Doc. 72 at 9). While

conceding Sobh is eligible for an award of statutory penalties, Phoenix Graphix argues the history of the parties' interactions establish no penalties should be awarded. Phoenix Graphix also argues Sobh's claim for breach of fiduciary duty has no basis and that Sobh's claim for unpaid wages is not supported by sufficient evidence.

## ANALYSIS

### I. Untimely ERISA Document Production

Pursuant to ERISA § 502(c)(1), when an ERISA plan participant requests plan documents from his plan administrator, but the plan administrator does not provide the documents within 30 days, the plan participant may be entitled to recover $110 a day until the documents are produced. 29 C.F.R. § 2575.502c-1. This liability is triggered only when plan administrators fail "to produce documents that they are required to produce as plan administrators." *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1162 (9th Cir. 2016). In addition, a request for documents must give the plan administrator "clear notice of what information the beneficiary desires." *Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995). Unclear or vague requests cannot be the basis for an award of statutory penalties.

The parties agree Sobh's ERISA § 502(c)(1) claim is subject to Arizona's one-year statute of limitations. Sobh filed the initial complaint in this suit on September 26, 2019.[4] Therefore, any aspect of Sobh's claim that accrued before September 27, 2018, is presumptively outside the statute of limitations.

In his briefing, Sobh identifies three requests for documents as the basis for his ERISA § 502(c)(1) claim: March 29, 2016; June 1, 2018; and October 30, 2018. (Doc. 70 at 8). Defendants' briefing identifies two additional requests: February 21, 2019, and September 17, 2019. (Doc. 72 at 8). The parties' disagreement on which requests are at issue is inexplicable. Sobh's position is especially strange because he does not seek summary judgment regarding the requests made on September 17, 2019, but those are the requests Phoenix Graphix concede were valid. Phoenix Graphix also concedes it did not

---

[4] That was the date Sobh filed his initial complaint. That complaint did not include a claim pursuant to ERISA § 502(c)(1). The parties agree the later amendment of Sobh's complaint to include an ERISA § 502(c)(1) claim means that claim relates back to the original complaint.

1 properly respond to those requests until December 6, 2019. Thus, Phoenix Graphix concedes Sobh is eligible for an award of statutory penalties based on the September 17, 2019, requests but Sobh did not seek summary judgment on those requests. Normally the Court would not grant summary judgment on a basis not sought by the moving party. *See Hoard v. Hartman*, 904 F.3d 780, 792 (9th Cir. 2018) ("[A] district court may sua sponte grant summary judgment for a nonmovant on grounds not raised by a party as long as the court has given the adversely impacted party 'notice and a reasonable time to respond.'"). But the record is fully developed and, most importantly, Phoenix Graphix admits possible liability regarding the September 17, 2019, requests. Thus, no purpose would be served by giving Phoenix Graphix formal notice that summary judgment regarding these requests might be granted. *Cf.* Fed. R. Civ. P. 56(f) (allowing for grant of judgment to nonmovant). The Court will treat Sobh's motion as if he had sought summary judgment regarding the September 17, 2019, requests.

### A. March 29, 2016[5] and June 1, 2018

For present purposes the Court will assume the requests made on these dates were sufficiently clear, made to the correct entity, and sought documents Sobh was entitled to receive. But even with those assumptions, these two requests fall outside the statute of limitations. Sobh tries to avoid this conclusion by arguing Arizona's discovery rule applies and, if not, he is entitled to equitable tolling under the federal version of equitable tolling. Sobh is incorrect at many steps of his analysis.

Sobh starts with the assumption that the accrual of his claim is a matter of Arizona law. That is incorrect. Under Ninth Circuit law, "the accrual of an ERISA cause of action is determined by federal, rather than state, law." *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 649 (9th Cir. 2000). Therefore, Sobh's citations to Arizona law regarding accrual, as well as Arizona law regarding the "discovery rule," are misplaced. However, Sobh's error appears to be of little importance because federal law recognizes a "discovery rule" similar to that recognized by Arizona law. *See,*

---
[5] Defendants repeatedly identify this as the "March 29, 2018" request. (Doc. 72 at 8). However, it is undisputed the email was dated March 29, 2016.

- 8 -

*e.g.*, *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (noting federal law recognizes "discovery rule").

Under the federal discovery rule, a claim accrues "once a plaintiff has knowledge of the critical facts of his injury, which are that he has been hurt and who has inflicted the injury." *Bibeau v. Pac. Nw. Rsch. Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999). Here, Sobh had sufficient knowledge regarding his March 2016 and June 2018 requests almost immediately after those requests.

According to Sobh, he requested documents in March 2016 and June 2018, but he did not receive any documents in response. When Sobh did not receive documents within thirty days of his requests, he knew he had been "hurt" and he knew the plan administrator had "inflicted the injury." *Id.* Thus, even accounting for the discovery rule, any claim regarding the March 2016 and June 2018 requests accrued before September 2018 and is now barred by the statute of limitations. *See Reynolds v. Merrill Lynch Basic Long Term Disability Plan*, 2015 WL 3822319, at *2 (D. Haw. June 19, 2015) ("After thirty days, a claimant know[s] of all the material facts relevant to [his § 1132(c)(1)] claim, and therefore is on notice to bring an action.").

While the discovery rule does not help Sobh, he also argues he is entitled to "equitable tolling." (Doc. 76 at 10). In support, Sobh cites the standard for equitable tolling under federal law. But having borrowed Arizona's statute of limitations, the Court likely must also borrow Arizona's standard for equitable tolling. *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) (noting, absent special circumstances, state law regarding equitable tolling governs when borrowing limitations period from state law). Again, however, this distinction appears to have no substantive impact because Sobh cannot satisfy the standard under either law.

To be entitled to equitable tolling under federal law, Sobh would have to show some "extraordinary circumstance" that "made it *impossible* to file on time." *Doe v. Garland*, 17 F.4th 941, 946 (9th Cir. 2021). That is a very demanding standard. Arizona's version of equitable tolling appears to be slightly more forgiving in that Sobh would have to

establish he was "prevented from filing in a timely manner due to sufficiently inequitable circumstances." *McCloud v. State, Ariz. Dep't of Pub. Safety*, 170 P.3d 691, 696 (Ariz. Ct. App. 2007). But even this facially more forgiving standard "should be used only sparingly" and is applicable only in unusual circumstances. *Id.* at 697.

Sobh's basis for equitable tolling is he was "completely unaware that Plan documents were hidden from him" and he was provided outdated documents at times. (Doc. 76 at 10). Given Sobh's position that no plan documents were provided to him in response to his March 2016 and June 2018 requests, it is unclear how he could have been "completely unaware" he was not provided the appropriate plan documents. And the failure to provide Sobh documents in response to his March 2016 and June 2018 requests has no connection to the later provision of outdated documents. Sobh could have filed suit after waiting thirty days for documents and receiving nothing. At the very least, Sobh has not pointed to any "extraordinary circumstances" that prevented him from filing suit earlier. The March 29, 2016, and June 1, 2018, requests for documents cannot serve as the basis for Sobh's claim.

### B. October 30, 2018[6]

As noted earlier, a valid request for documents must give the plan administrator "clear notice of what information the beneficiary desires." *Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995). Sobh argues the following statement in an October 30, 2018, email from his counsel was a sufficiently clear request for documents:

> Seeing as we made a first request for payout of the Plan in August 2018 and have made multiple request [sic] for the Plan Documents since that time, we believe the my [sic] client is entitled to receive the $110 a day until he has received the materials requested and or the appropriate contents of notice of denied claim.

(Doc. 71-8 at 2). This statement was not a clear request for particular plan documents. In fact, this does not seem to have been a request for plan documents at all. The statement

---

[6] Defendants claim the statute of limitations bars requests for documents "prior to September 27, 2018" but then state the October 30, 2018, request "is outside the statute of limitations." (Doc. 72 at 8-9). Because October comes after September, events occurring in October 2018 are not barred by the one-year statute of limitations.

- 10 -

references earlier requests for documents that had been ignored.  Sobh does not provide evidence of those earlier requests nor does he cite any authority that referencing an earlier request for documents can, by itself, trigger liability under ERISA § 502(c)(1).  Instead of pointing to specific requests for documents, Sobh believes a vague statement that other requests had been ignored can trigger liability.  It cannot.

### C.  February 21, 2019[7]

On February 21, 2019, Sobh sent an email to the plan administrator stating, in relevant part: "I would like to inform you that I have not received any materials/documents regarding the profit sharing plan since June 31, 2018."  (Doc. 73-3 at 40).  Again, this is not a sufficiently clear request for particular plan documents.  Sobh's email does not identify a particular document he was seeking and the plan administrator could not have known which documents would be responsive.  The simple statement by Sobh that he had not received "any materials/documents . . . since June 31, 2018" cannot serve as the basis for liability.

### D.  September 17, 2019

On September 17, 2019, both Sobh and his counsel sent Phoenix Graphix requests for plan documents. Phoenix Graphix concedes these requests were sufficiently clear, were sent to the correct entity, and that documents should have been produced within thirty days but were not.  (Doc. 72 at 9).  Responsive documents were not produced until December 6, 2019.  That production was fifty days late, meaning the maximum Sobh may be entitled to recover is $5,500 (*i.e.*, $110 X 50 days).  With possible liability conceded, the only issue is the amount of penalty, if any, that is appropriate in the circumstances of this case.

ERISA § 502(c)(1) states a penalty may be assessed "in the court's discretion."  In exercising that discretion courts often consider, among other factors, "bad faith or intentional misconduct by the administrator, the length of delay, the number of requests made and the extent and importance of the documents withheld, and any prejudice to the

---

[7] Defendants again argue "this request is barred by the statute of limitations" but they provide no explanation how that could be correct given that the complaint was filed only seven months after this request. (Doc. 72 at 9).

- 11 -

participant." *Barling v. UEBT Retiree Health Plan*, 145 F. Supp. 3d 890, 895 (N.D. Cal. 2015). The unique circumstances of the present case establish a penalty is appropriate, but the maximum penalty would be excessive.

Starting with the issue of bad faith or intentional misconduct, Sobh has not pointed to evidence of such behavior. At the same time, however, Phoenix Graphix has not provided an explanation why the documents were not produced in a timely manner. From September 2018 through September 2019, Phoenix Graphix and its counsel were confused about which version of various Plan documents was correct. But as of September 2019, it was long past time for Phoenix Graphix to have identified the correct documents. Thus, when Phoenix Graphix received the September 17, 2019, requests for documents, it should have been able to immediately provide documents. While there is insufficient evidence to conclude Phoenix Graphix's delay was intentional or the product of bad faith, its behavior was extremely careless. This supports awarding a penalty.

The next factors are the length of the delay and the importance of the documents. As of September 2019, the parties had been involved in contentious interactions regarding the Plan for years. Given that, Phoenix Graphix's fifty-day delay in producing the documents was significantly longer than reasonable. In addition, the documents requested were the most important documents for Sobh to determine his rights under the Plan. Therefore, these factors support awarding a penalty.

The factor regarding the number of requests weighs against awarding a penalty. The September 17, 2019, requests are the only requests at issue given that all the other requests are either time-barred or were insufficiently clear. Therefore, this is not a situation where Sobh made repeated clear requests for documents which were ignored.

Finally, the factor regarding prejudice weighs against award a penalty because Sobh suffered no prejudice as a result of the delayed production of documents. Focusing on the September 17, 2019, requests, the failure to timely produce documents had no impact on Sobh's behavior. In particular, the untimely production did not prompt the present suit because Sobh filed suit only nine days after making the requests. (Doc. 1). Moreover,

even after receiving the documents in early December 2019, Sobh continued to pursue the same claims he had alleged in his original complaint. Thus, the delay had no impact on Sobh's options or behavior.

Beyond the usual factors regarding whether to award a penalty there is an additional factor in this case that weighs against awarding Sobh the maximum available penalty. Sobh's behavior during the past three years establishes his litigation efforts have been primarily motivated by something other than a simple desire to obtain his Plan benefits. A recital of a few crucial facts establishes this point.

Shortly after leaving employment, Sobh sent an email requesting distribution of his Plan benefits. On August 15, 2018, Brian Kotarski responded to Sobh's email and informed Sobh he could receive his benefits "[a]s soon as administratively feasible after" the Plan year. (Doc. 73-1 at 31). That meant Sobh could receive all of his benefits in "March/April" of 2019 if Sobh completed the necessary forms. (Doc. 73-1 at 31). Despite that information, Sobh chose to file his first lawsuit on November 14, 2018. At the time he filed that suit, it should have been obvious that litigation could not possibly result in Sobh obtaining his benefits earlier than March or April 2019. In fact, on February 6, 2019, Sobh received formal notice that, upon the completion of forms, he would receive his Plan benefits on March 31, 2019. (Doc. 73-2 at 5). Instead of completing those forms and accepting the almost immediately payment of his full benefits, Sobh chose to continue the litigation.[8]

It is true that shortly before Sobh filed his first lawsuit, as well as after, Sobh and his counsel were provided inaccurate information and out-of-date versions of the Plan. But Sobh made errors of his own. In drafting the complaint in his first lawsuit, Sobh alleged he was seeking a "cash-out" of his Plan benefits. Even under the version of the Plan Sobh believed was in effect, he was not entitled to a "cash-out" earlier than March or April 2019. In other words, Sobh's initial lawsuit sought relief that Sobh had already been told he could

---

[8] Even assuming Sobh wished to continue to pursue some of the claims in his first suit, at the very least his claim seeking plan benefits should have been dropped given that the Plan was willing to distribute his entire account balance if he completed the forms stating he wished to receive the balance.

- 13 -

obtain. When Sobh attempted to alter the theory alleged in his complaint such that he could obtain a "hardship distribution," the Court concluded Sobh would need to amend his complaint to do so. Sobh chose not to do so. Instead, Sobh filed the present suit.

The present suit led to a ruling that the governing Plan did not allow for Sobh to receive a "hardship distribution." But that apparently had no impact on Sobh because he could obtain his Plan benefits by completing the requisite forms. In fact, in February 2021, Sobh completed the forms and received all of his Plan benefits shortly thereafter. Thus, Sobh pursued two separate lawsuits, and years of litigation, to merely arrive at where he could have been as of March or April 2019. The fact that he was, at times, provided inaccurate documents had no impact on his behavior nor did those documents have any impact on the amount Sobh eventually received.

Sobh's communications with Phoenix Graphix and its employees also indicate this litigation has been driven by an attempt to punish his former employer for their perceived treatment of Sobh. For example, Sobh's emails establish he believed his "health" could not handle "further stress" from Anne Kotarski and another employee. (Doc. 80-1 at 12). A subsequent email explained Sobh's belief those two employees had a "dark ego." (Doc. 80-1 at 13). Another email from Sobh said Anne Kotarski was "free to grow her ego against me the way she wants. But it is absolutely not fair for you to have my kids suffer of her unfairness and injustice acts [sic] by momentumly [sic] holding my money." (Doc. 73-3 at 40). Other emails indicate Sobh believed Phoenix Graphix personnel were engaged in "bias personal revenge behaviors" against him. (Doc. 73-3 at 11). And in his deposition, Sobh explained he did not take an earlier distribution of his Plan benefits because "Anne wants to take revenge back on me." (Doc. 73-2 at 31). Thus, Sobh appears to have viewed this litigation as an attempt to get even with Phoenix Graphix and its employees.

Considering all the circumstances, Phoenix Graphix's failure to produce documents in response to the September 17, 2019, requests cannot be justified and Sobh is entitled to a statutory penalty. But based on Sobh's own inexplicable behavior from 2018 through the present, the penalty will be reduced to $55 per day. Thus, Sobh is entitled to an award

of $2,750.

## II. Breach of Fiduciary Duty

Sobh has alleged a claim for breach of fiduciary duty under ERISA § 502(a). During discovery Sobh identified the factual bases for this claim. (Doc. 73-3 at 49-50). While not clear, Sobh set forth three bases: he had not been provided documents in a timely manner, his requests for immediate distribution of his Plan assets were rejected, and Phoenix Graphix had taken its actions to "limit potential liability" instead of "protecting [Sobh] or fulfilling the fiduciary duty owed to [Sobh]." (Doc. 73-3 at 50). In opposing summary judgment, Sohb seems to assert a new basis that he received "misinformation" and out-of-date Plan documents. (Doc. 76 at 7). In attempting to distinguish between his various claims Sobh explains he has a claim for not producing Plan documents within thirty days as well as "a completely separate claim" for breach of fiduciary duty "based on the fact that 'complete and accurate information' was not provided."[9] (Doc. 76 at 7). Sobh does not provide any meaningful elaboration of this latter point.

An ERISA plaintiff cannot pursue a breach of fiduciary duty claim based on actions that can be remedied through other types of claims. For example, an ERISA plaintiff may not pursue a breach of fiduciary duty claim when what he is really doing is bringing a disguised claim for a denial of benefits. *See Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020). Accordingly, despite Sobh's shifting descriptions of his breach of fiduciary duty claim, his claim fails as a matter of law because the harms he identifies as the basis for his claim can be remedied through other means. That is, the failures regarding the production of documents can be redressed through an ERISA § 502(c)(1) claim. And the failure to distribute Plan benefits in the manner Sobh requested can be redressed through an ERISA § 502(a)(1)(b) claim.[10] Therefore, Defendants are entitled to summary

---

[9] In an entirely separate section of his opposition to summary judgment, Sobh argues his breach of fiduciary duty claim is also based on the "failure to provide [him] with a detailed reason as to why [he] was denied a hardship distribution when requested and failed to provide any Plain [sic] documents to support their position." (Doc. 76 at 13). It is not clear what Sobh is arguing but it appears this is connected to his claim for benefits brought under ERISA § 502(a)(1)(b).

[10] Sobh's breach of fiduciary duty claim also likely would fail based on the absence of an available equitable remedy. There are "three types of . . . traditional equitable remedies

- 15 -

judgment on Sobh's claim for breach of fiduciary duty.

### III. State Law Unpaid Wages

Sobh's final claim is for unpaid wages under Arizona law. The allegations in the operative complaint are that Sobh was "entitled to outstanding bonus payments as wages, prior to his termination."[11] The parties agree this claim is subject to a one-year statute of limitations. Because Sobh's last day of employment was in July 2018, and the complaint was not filed until September 2019, Defendants argue the unpaid wages claim is barred by the statute of limitations and, in any event, is unsupported by sufficient evidence. Sobh's opposition contains only five lines addressing this claim but it is exceptionally difficult to understand Sobh's position.

According to Sobh, he was entitled to a "quarterly bonus" that "would have been due the end of the third quarter of 2018 which would have been within one year from the time that the action was filed." (Doc. 76 at 16). In support of this, Sobh references his own affidavit that is not entirely coherent. That affidavit states Brian Kotarski agreed, on an unidentified date, that Sobh "would receive a quarterly bonus of $6,000 before tax." (Doc. 77-4 at 3). Sobh further states, with no supporting details, the bonus was "due any pay period before the end of the third quarter (September 30th) of 2018." Sobh describes the bonus as "not extra money" but "compensation for the work [Sobh] delivered to Brian and [Phoenix Graphix] in and outside my everyday employment duties." Sobh then provides examples of additional work he did "during the second quarter." Defendants are entitled to summary judgment on this claim because Sobh has not provided sufficient evidence in support of this claim but, even if he had, it would be barred by the statute of limitations.

---

that may be available" for a successful breach of fiduciary duty claim: "reformation of the plan," equitable estoppel to hold "the fiduciary to what it had promised," and "monetary compensation for a loss resulting from a trustee's breach of duty." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955-57 (9th Cir. 2014). None of these remedies appear relevant here given that Sobh is not seeking changes to the Plan, was not promised additional benefits, and did not suffer any loss.

[11] The complaint also claims Sobh was entitled to have his "paid-time-off and paid sick leave . . . cashed out." (Doc. 20 at 15). That aspect of the claim is not referenced by the parties and the Court will deem it abandoned.

- 16 -

Arizona law would seem to preclude Phoenix Graphix from withholding payment of a fully earned bonus until months after an employee is fired. Under Arizona law, when an employee is fired all "wages" must be paid to the employee "within seven working days or the end of the next regular pay period, whichever is sooner." A.R.S. § 23-353(A). "Wages" are defined as including all "nondiscretionary compensation due an employee." A.R.S. § 23-350(7).

Sobh believes his "quarterly bonus" was earned during the second quarter but could be paid at any time up to September 30, 2018. Yet Sobh's own complaint describes his claim as one for "improperly retained wages" and states the "outstanding bonus payments" were "wages under Arizona law." (Doc. 1 at 6). Thus, under Sobh's own allegations, the bonus at issue was equivalent to "wages" and, by law, Phoenix Graphix was required to make the bonus payment shortly after Sobh's last day. Sobh has not offered any explanation how the bonus payment could be "wages" but those "wages" were not payable until September 30, 2018. Moreover, Sobh describes the bonus as nondiscretionary and fully earned but Sobh has not provided any explanation, or any evidence, that the bonus remained payable if Sobh was no longer employed at the time the bonus would be paid.

Assuming the bonus was owed at the time Sobh was fired, it was payable at the latest shortly after Sobh's last day of work. Because Sobh did not file suit until approximately fourteen months after his last day, the statute of limitations also bars the claim.

**IV.   Attorneys' Fees**

In their motions for summary judgment both parties request an award of attorneys' fees. (Doc. 70 at 13; Doc. 72 at 14). To the extent any party believes it is entitled to an award of fees, it should file a post-judgment motion in compliance with Local Rule 54.2.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 70) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** the Motion for Summary Judgment (Doc. 72) is

**GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment in favor of Plaintiff against Defendant Phoenix Graphix in the amount of $2,750 on Count Four and in favor of Phoenix Graphix on Counts One, Two, Three, and Five.  Judgment should also be entered in favor of Defendants PGI/Phoenix Graphix Incorporated Profit Sharing Plan and Trust, Brian Kotarski, and Anne Kotarski against Plaintiff on all claims.  The Clerk of Court shall close this case.

Dated this 12th day of January, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge